IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANA M. B.,[1]

        Plaintiff,

    v.

COMMISIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:21-cv-00971-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Dana B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title II Disability Insurance Benefits and Title XVI Social Security Income. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

Born in 1977, plaintiff alleges disability beginning January 1, 2017, due to major depression, hypertension, osteoarthritis, degenerative disc disease, post-traumatic stress disorder, obstructive sleep apnea, and fibromyalgia. Tr. 209-16, 251.

Plaintiff's application was denied initially and upon reconsideration. Tr. 133-49. On October 21, 2020, an Administrative Law Judge ("ALJ") held a hearing, wherein plaintiff was represented by counsel and testified. Tr. 35-66. A vocational expert ("VE") also testified. On November 4, 2020, the ALJ issued a decision finding plaintiff not disabled. Tr. 29. After the Appeals Counsel denied her request for review, plaintiff filed a complaint in this Court.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 19. At step two, the ALJ determined that the following impairments were severe and medically determinable: "obesity; chronic knee pain with osteophytosis of the right knee; chronic back pain with mild lumbar spondylosis; posttraumatic stress disorder; anxiety disorder; depression; seizure disorder." *Id.* At step three, the ALJ found plaintiff's impairments, either individually or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20-23.

The ALJ proceeded to evaluate how plaintiff's impairments affected her ability to work. Tr. 23. The ALJ determined plaintiff had the residual function capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 416.967(a), except she was limited to:

> lifting ten pounds occasionally and less than ten pounds frequently; carrying ten pounds occasionally and less than ten pounds frequently; sitting for six hours; and standing and walking for two hours. The claimant can push and pull as much as she can lift and carry. The claimant can occasionally reach overhead with the right

PAGE 2 – OPINION AND ORDER

upper extremity. For all other reaching, she can reach frequently with the right upper extremity. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can never work at unprotected heights, never around moving mechanical parts, and can never operate a motor vehicle. The claimant is able to perform simple, routine tasks. The claimant is able to make and perform simple work-related decisions. The claimant is able to interact occasionally with supervisors, coworkers, and the public. The claimant's Time Off Task includes time off task that can be accommodated by normal breaks.

Tr. 23.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 27. At step five, the ALJ concluded there were a significant number of jobs in the national economy plaintiff could perform despite her impairments, such as final assembler, addresser, and laminator. Tr. 29.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) finding her fibromyalgia not medically determinable at step two; (2) failing to properly weigh the opinion of treating physician Cathleen Bruner, D.O.; and (3) rejecting the lay witness testimony of her sister. Pl.'s Opening Br. 4-10 (doc. 18). Alternatively, plaintiff contends the record is inadequate, such that the ALJ's duty to further develop the record was triggered. *Id.* at 17.

**I.    Step Two Finding**

Plaintiff asserts the ALJ committed reversible legal error by failing to include fibromyalgia as a medically determinable, severe impairment. At step two, the ALJ decides whether the claimant's alleged impairment or combination of impairments are medically determinable and severe. 20 C.F.R. § § 404.1520(c), 416.920(c). An impairment is severe if it "significantly limit[s]" the claimant's ability to do basic work activities, which are defined as "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521, 416.921. An

impairment is medically determinable if it is diagnosed by an acceptable medical source and based on acceptable medical evidence. SSR *96-4p, available at* 1996 WL 374187; 20 C.F.R. §§ 404.1513(a), 416.913(a). Generally, the step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).

Specifically, fibromyalgia can be established as medically determinable under either of two separate sets of criteria, enumerated in Social Security Ruling 12-2p. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015). First, based on the "1990 ACR Criteria for the Classification of Fibromyalgia," this impairment is medically determinable if: (1) the claimant has a "history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present."; (2) "[a]t least 11 positive tender points on physical examination"; and (3) there is "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p, 1996 WL 374187, at *2-3.

Second, based on the "2010 ACR Preliminary Diagnostic Criteria," this impairment is medically determinable if: (1) the claimant has a "history of widespread pain," as elaborated in the 1990 ACR criteria; (2) the claimant has "[r]epeated manifestations of six or more symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* at *3.

Here, in assessing fibromyalgia at step two, the ALJ acknowledged plaintiff's testimony

PAGE 4 – OPINION AND ORDER

that she "carries a diagnosis of fibromyalgia." Tr. 23-24. Yet the ALJ determined fibromyalgia was not medically determinable: "Despite stating that the condition has dramatically worsened over the last four to five years, the claimant was able to work during that time, and none of her providers detected the requisite eleven-trigger point testing to confirm the diagnosis during the adjudicative period." Tr. 24. Accordingly, the ALJ found "no objective signs showing the evidence required under SSR 12-2p." *Id.*

As an initial matter, an ALJ errs "by not fully accounting for the context of materials or all parts of the testimony and reports" contained in the record. *Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998). Further, it is well-established the symptoms of fibromyalgia "wax and wane" and that a person may have "good days and bad days." SSR 12-2p, 1996 WL 374187, at *6. During the October 2020 hearing, plaintiff testified her fibromyalgia had gradually worsened since she was diagnosed as a teenager, most "dramatically" over the past five years. Tr. 56-57. Plaintiff explained that while working at H&R Block between 2009 and 2012, she was better able to manage her exhaustion and pain, which "wasn't as bad" as it is now. Tr. 45, 57. After becoming self-employed in 2013, plaintiff stated she could only work "an hour or two here and there" but "even that became too much." Tr. 45, 57. Similarly, while doing seasonal work with Disney from 2016-2017, plaintiff reported she was physically unable to complete her three-hour shifts because the fatigue and pain in her back, lower legs, and feet was "just excruciating." Tr. 47. In other words, the ALJ mischaracterized the tone and the content of plaintiff's testimony regarding her work history, which is consistent with the record before the Court. *See, e.g.*, Tr. 399, 404, 427, 536, 770-71, 800-01, 820, 1172.

Notwithstanding any mischaracterization of the record, the ALJ erred by only analyzing fibromyalgia under the 1990 ACR criteria, as it refers to trigger point testing. Although the ALJ

is correct that the record before the Court does not indicate detection of the requisite eleven trigger points,[2] he completely ignored the 2010 ACR criteria. *See, e.g.*, Tr. 1005, 1030, 1087, 1143, 1268, 1278 (medical providers assessing anywhere from 6 to 10 trigger points upon examination).

An ALJ's failure to evaluate evidence of fibromyalgia under the 2010 ACR criteria constitutes legal error. *Kaytlin B. v. Comm'r Soc. Sec. Admin.*, 2020 WL 5803937, *4 (D. Or. Sept. 2020); *see also Rounds*, 807 F.3d at 1005. Crucially, under the 2010 ACR criteria, trigger point testing is not required to establish medical determinability.

Consistent with the first prong of the 2010 ACR criteria, the medical record demonstrates widespread pain symptoms that were discussed regularly with plaintiff's treating providers. In fact, fibromyalgia and corresponding pain symptoms were often the chief complaint that led plaintiff to seek medical attention. *See, e.g.*, Tr. 355, 371, 399-405, 438, 830, 1142, 1144. Plaintiff also carried widespread chronic pain and fibromyalgia as historical diagnoses. *See, e.g.*, Tr. 430-41, 552, 678, 751-54, 1126, 1133, 1161, 1165, 1172-74. For instance, plaintiff visited either Aaron Erez, D.O., or Dr. Bruner approximately once per month from August 2016 through January 2018 to address, amongst other conditions, her fibromyalgia, back pain, depression, and chronic migraines. *See, e.g.*, Tr. 479, 482-83, 499-500, 517, 526, 541-42, 546, 678; *see also* Tr. 1277 (plaintiff presenting to Dr. Bruner in September 2020 "with depression and PTSD complicated by chronic pain syndrome, difficulty sleeping, and fibromyalgia"). Additionally, in

---

[2] According to plaintiff, an exam "finding 11 trigger points was made when [she] was 16." Pl.'s Opening Br. 8 (doc. 18); Tr. 50; *see also* Tr. 847, 1053 (medical records reflecting plaintiff's diagnosis with fibromyalgia as a teenager). Plaintiff further notes fibromyalgia is not curable; therefore, an eleven trigger-point exam "was not tried and failed, it was simply not done as the diagnosis was clear." Pl.'s Opening Br. 8 (doc. 18). Even accepting plaintiff's argument as true, the fact remains that the record before the Court does not include any acceptable medical evidence to establish the 1990 ACR criteria..

December 2019, Jordan Reader, D.O., documented that plaintiff was experiencing "chronic pain in [her] neck and upper and lower back," as well as regional somatic dysfunction of the head and rib cage. Tr. 1148-51. In sum, plaintiff's enduring widespread pain has been well-documented.

Likewise, the record demonstrates six or more fibromyalgia symptoms, signs, or co-occurring conditions identified in SSR 12-2p. Notably, the ALJ determined plaintiff's anxiety and depression were medically determinable and severe, both of which are symptoms of fibromyalgia. Tr. 19. Plaintiff also endured frequent and widespread muscle pain and weakness across her neck, shoulders, wrists, and lower extremities, along with numbness, tingling, and chest pain. *See* Tr. 676 (noting plaintiff was "standing in room due to pain"); *see also* Tr. 355, 371, 375, 378-82, 445, 520, 554, 676, 688, 752, 1019-22, 1063, 1144. Plaintiff repeatedly reported chronic fatigue and tiredness. Tr. 461, 721, 742, 748, 1160.[3] Furthermore, plaintiff experienced headaches and migraines, dizziness, and blurred vision. *See, e.g.*, Tr. 355, 461, 554, 721, 832, 1019, 1063, 1163. These manifestations of fibromyalgia, documented by numerous acceptable medical sources – including Drs. Erez, Bruner, and Reader – satisfy the second prong of the 2010 ACR criteria.

Turning to the final prong, neither the ALJ nor plaintiff specifically address whether evidence of other disorders that could cause plaintiff's repeated fibromyalgia manifestations were excluded. Nevertheless, the ALJ's conclusion regarding fibromyalgia is problematic for a number of reasons. First, with regard to depression and anxiety, the ALJ found both to be medically determinable, severe impairments. Tr. 19. Those diagnoses, however, are co-occurring fibromyalgia symptoms, such that they do not foreclose fibromyalgia from being medically

---

[3] Although chronic fatigue and tiredness can be associated with plaintiff's obtrusive sleep apnea, they are also conditions of fibromyalgia under SSR 12-2p.

determinable. *See Kaytlin B.*, 2020 WL 5803937 at *5 ("Clearly, a depression diagnosis would not be eliminated as a source of symptoms because not only are the conditions often co-occurring, but depression is also itself a symptom of fibromyalgia."). Second, plaintiff's longstanding physician, Dr. Bruner, treated her for fibromyalgia despite the existence of co-occurring or overlapping diagnoses. *See, e.g.*, Tr. 1268-69. Third, an independent review of the record does not reveal the presence of any other conditions that could account for many of plaintiff's symptoms, such as generalized pain that waxes and wanes.

      The ALJ's decision to find plaintiff's fibromyalgia not medically determinable at step two adversely affected each subsequent step of the sequential evaluation process (including plaintiff's other allegations of errors surrounding the lay testimony and assessment of Dr. Bruner's opinion, which outlined restrictions largely related to plaintiff's fibromyalgia).[4] That is, the ALJ's subsequent evaluation, including the RFC assessment, explicitly did not consider the effects of plaintiff's non-medically determinable impairments. To be sure, the ALJ's decision considered several signs or co-occurrences of fibromyalgia, such as plaintiff's periodic "forgetfulness" and "anxiety." Tr. 21-22. Nevertheless, several of plaintiff's symptoms, such as dizziness, blurred vision, numbness and tingling, and chest pain, bear little relation or similarity to the medically determinable impairments the ALJ did identify and evaluate.

      As such, the ALJ's error at step two was harmful. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless); *see also Janie Elizabeth G. v. Saul*, 2020 WL 13505040, *5 (W.D. Wash. May 29, 2020); (ALJ commits

---

[4] Importantly, Dr. Bruner endorsed many restrictions beyond those outlined in the RFC, such as the need to shift positions at will, have unscheduled breaks, lie down intermittently throughout the day, and miss more than four days of work per month. Tr. 1269-72.

PAGE 8 – OPINION AND ORDER

reversible error at step two by "not including fibromyalgia as a medically determinable impairment [where] fibromyalgia symptoms [are excluded] from consideration at steps four and five").

## II. Remedy

The decision whether to remand for further proceedings or for a finding of disability and an immediate award of benefits lies within the discretion of the court. Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

This case is not one of those rare instances where remand for an immediate award of benefits is warranted. *Treichler*, 775 F.3d at 1105-07. Failing to consider whether plaintiff's symptoms met the 2010 ACR criteria has been recognized as grounds for further proceedings. *See, e.g., Kaytlin B.*, 2020 WL 5803937 at *7; *Weiskopf v. Berryhill*, 693 Fed. App'x 539, 542 (9th Cir. 2017).

Additionally, the ambiguities remaining in the record are cause for further proceedings. For instance, plaintiff was able to engage in substantial gainful activity during 2015, and perform some work in 2016 and 2017, despite endorsing significantly worsening fibromyalgia symptoms at that time. The ALJ also found plaintiff's subjective symptom testimony inconsistent with the medical record based, in part, on her ability to parent four children with special needs. Plaintiff

PAGE 9 – OPINION AND ORDER

does not challenge that finding on appeal. Tr. 24. In contrast, as addressed herein, the ALJ overlooked longstanding treatment for a number of plaintiff's documented fibromyalgia symptoms, including muscle spasms, dizziness, blurred vision, numbness and tingling, and chest pain. *See, e.g.*, Tr. 800-801, 820, 1172, 1269. Likewise, the ALJ noted examples of plaintiff describing problems of forgetfulness and impaired memory to her providers despite her providers regularly indicating normal memory, cognition, and attention. *See, e.g.*, Tr. 1162, 1262.

Therefore, upon remand, the ALJ must reevaluate the medical and other evidence of record (especially at step two under the 2010 ACR criteria) and, if necessary, reformulate plaintiff's RFC and obtain additional VE testimony.

## CONCLUSION

For the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 21st day of November, 2022.

                               /s/ Jolie A. Russo
                                    Jolie A. Russo
                         United States Magistrate Judge

PAGE 10 – OPINION AND ORDER